# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JAMES J. DONELON**                                               **CIVIL ACTION**

**VERSUS**

                                                                              **NO. 20-177-BAJ-RLB**

**JEFFREY C. POLLICK, ET AL.**

## NOTICE

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

      **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

      Signed in Baton Rouge, Louisiana, on October 2, 2020.

      **RICHARD L. BOURGEOIS, JR.**
      **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES J. DONELON                                   CIVIL ACTION

VERSUS
                                                   NO. 20-177-BAJ-RLB
JEFFREY C. POLLICK, ET AL.

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Leave to File First Amended and Restated Petition for Damages and Jury Demand ("Motion to Amend"). (R. Doc. 22). The motion is opposed. (R. Docs. 34, 42, 43, 46). Plaintiff filed reply memoranda. (R. Docs. 57, 70, 71, 74).

Also before the Court is Plaintiff's Motion for Remand. (R. Doc. 23). The motion is opposed. (R. Docs. 41, 44). Plaintiff filed reply memoranda. (R. Docs. 69, 72).

I.      Background

On or about February 19, 2020, James Donelon, as the Commissioner of Insurance for the State of Louisiana ("Commissioner"), in his capacity as Rehabilitator of Excalibur National Holdings, Inc. ("Excalibur Holdings"), through his duly appointed Receiver, Billy Bostick ("Receiver") (collectively, "Plaintiff") filed this action in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana ("State Court"). (R. Doc. 1-1 at 1-24, "Petition"). Excalibur Holdings was the parent company of Excalibur National Insurance Company ("Excalibur Insurance"), an insurance company chartered under the laws of the State of Louisiana, and Excalibur National Risk Management, LLC ("Excalibur Risk Management"). (Petition ¶¶ 1, 6). Plaintiff was declared rehabilitator of Excalibur Holdings in a Louisiana state court proceeding, initiated by Plaintiff, against Excalibur Holdings and Excalibur Insurance in the 19th Judicial District Court (the "Rehabilitation Proceeding"). (Petition ¶ 5). On August 30,

1

2019, a Permanent Order of Rehabilitation ("Rehabilitation Order") (R. Doc. 41-1) was entered in the Rehabilitation Proceeding, which placed Excalibur Insurance and Excalibur Holdings into rehabilitation and under the direction and control of the Commissioner of Insurance for the State of Louisiana as Rehabilitator, and Billy Bostick as the duly appointed Receiver of these two entities. (Petition ¶ 5). In connection with certain transactions, the Receiver, on behalf of Excalibur Holdings, accepted certain causes of action from Excalibur Insurance and Excalibur Risk Management. (Petition ¶¶ 7-9).

Plaintiff names as defendants Jeffry C. Pollick ("Pollick"), Dennis P. Neyland ("Neyland"), Antonio Scognamiglio ("Scognamiglio"), Katrina Rigali Trump ("Trump"), The Bank of Tampa ("Bank of Tampa"), Seacoast Banking Corporation of Florida d/b/a Seacoast National Bank ("Seacoast Bank"), and Capitol Specialty Insurance Company ("CapSpecialty").[1] (Petition ¶ 11). Pollick was the Chief Executive Officer, President and Director of Excalibur Holdings, Excalibur Risk Management and Excalibur Insurance at the pertinent times, while Neyland and Scognamiglio were Directors of Excalibur Holdings and Directors and Officers of Excalibur Insurance at the pertinent times. (Petition ¶ 11(b)-(c)).

Plaintiff alleges that Excalibur Insurance failed to secure an additional $3 million capital contribution (in excess of Excalibur Insurance's approximate $5 million initial capitalization) pursuant to the terms of a Consent Agreement entered into by it and the Louisiana Department of Insurance (the "LDI") on March 22, 2016. (Petition ¶¶ 14-29). After raising an additional $1,414,000 in capital to satisfy the terms of the Consent Agreement, Plaintiff alleges that Excalibur Holdings, through Pollick, borrowed from the Bank of Tampa $1,950,000 ("Bank of Tampa Loan") and deposited the $1,944,825 of the proceeds of the loan into a Certificate of

---

[1] The Notice of Removal asserts that this entity is Capitol Specialty Insurance Corporation. (R. Doc. 1 at 1).

Deposit account in the name of Excalibur Insurance. (Petition ¶¶ 18-22). Plaintiff alleges that on

April 19, 2016, Excalibur Insurance assigned to the Bank of Tampa the Certificate of Deposit to

secure the Bank of Tampa Loan, and Pollick falsely represented to the LDI that it was an

additional capital contribution by Excalibur Holdings which satisfied the terms of the Consent

Agreement. (Petition ¶¶ 26-27).

Plaintiff alleges that Neyland discovered, in or around April 2018, during the course of an

audit, that Pollick had failed to perform his duties as CEO and Director of the various Excalibur

entities, and wrote a letter to the boards of these companies informing them of Pollick's actions.

(Petition ¶¶ 50-53). The Petition alleges that Neyland would have taken corrective action had he

known that the terms of a Bank of Tampa loan and subsequent Northstar Bank loan violated the

terms of a Consent Agreement with the LDI. (Petition ¶ 54). In Count 1 of the Petition, Plaintiff

asserts causes of action for "Breach of Fiduciary Duty" collectively against the "D&O

Defendants" (Pollick, Neyland, and Scognamiglio). (Petition ¶¶ 58-68). Plaintiff's general

allegations against the D&O Defendants with respect to this claim are as follows:

> The D&O Defendants owed Excalibur Holdings and Excalibur Insurance, their
> members, and their creditors, fiduciary duties of loyalty, including the exercise of
> oversight as pleaded herein, due care, and the duty to act in good faith and in the
> best interest of Excalibur Holdings and Excalibur Insurance. The D&O
> Defendants stand in a fiduciary relation to Excalibur Holdings, Excalibur
> Insurance and their members and creditors and must discharge their fiduciary
> duties in good faith, and with that diligence, care, judgment and skill which the
> ordinarily prudent person would exercise under similar circumstances in like a
> position.

> The D&O Defendants breached their fiduciary duties to Excalibur Holdings and
> Excalibur Insurance in the particulars set forth in this Count One.

(Petition ¶¶ 59-60). With respect to Neyland, the Petition specifically alleges that he "breached

his fiduciary obligations by negligently or grossly negligently failing to determine that the terms

of the Bank of Tampa Loan for which they granted Pollick, as CEO, authority to enter into on

behalf of Excalibur Insurance and Excalibur Holdings did not satisfy the requirements that the LDI set forth in the Consent Agreement." (Petition ¶ 62). Plaintiff alleges that Pollick's conduct constitutes "willful misconduct" and he "acted grossly negligently, incompetently in many instances and deliberately in other instances, all in a manner that damaged Excalibur Holdings and Excalibur Insurance, their shareholders, and creditors." (Petition ¶ 63).

On March 24, 2020, CapSpecialty, Trump, and Bank of Tampa filed a Notice of Removal asserting that the Court has diversity jurisdiction under 28 U.S.C. § 1332. (R. Doc. 1). The Notice of Removal asserts that while both Plaintiff and Neyland are citizens of Louisiana, there is complete diversity of citizenship because Neyland was improperly joined as a defendant for the purposes of diversity jurisdiction, and his citizenship must be ignored. (R. Doc. 1 at 4-13). The Notice of Removal asserts that the allegations in the Petition are insufficient to state a claim against Neyland under Louisiana law. In particular, the Notice of Removal asserts that under Louisiana Revised Statute 12:1-831 to 832, absent a provision in the articles of incorporation to the contrary (which is not alleged), Plaintiff's allegations that Neyland breached a duty of care by failing to earlier discover the issues relating to the loan fail to state a claim. (R. Doc. 1 at 12-13).

Plaintiff then filed the instant Motion to Amend (R. Doc. 22) and Motion to Remand (R. Doc. 23).

## II.    Arguments of the Parties

In support of the Motion to Remand, Plaintiff further asserts that the Notice of Removal wrongly states that the Louisiana Business Corporation Act, La. R.S. 12:1-101, *et seq*., applies because Excalibur Holdings is incorporated in Delaware and, accordingly, under Louisiana's choice of law rules and the "internal affairs doctrine" adopted by the Fifth Circuit, the

substantive law of Delaware applies to determine whether a corporate director like Neyland breached his fiduciary duty of loyalty. (R. Doc. 23-1 at 3, 6-8). Plaintiff asserts that he has raised a claim against Neyland for breach of his fiduciary duties, particularly the duty of loyalty, as recognized in *In re Caremark Int'l Inc. Deriv Litig*, 698 A.2d 959, 971 (Del. Ch. 1996). (R. Doc. 23-1 at 8-10). Plaintiff asserts that the alleged facts pled in the original Petition state a *Caremark* claim and, to the extent they do not, his Motion to Amend should be granted to assert additional factual allegations in support of the claim. (R. Doc. 23-1 at 11-13).

In opposing the Motion to Remand, Defendants argue that Plaintiff's claims are improperly joined because they are governed by Louisiana law, and Louisiana Revised Statute 12:1-832, which insulates Neyland from any liability in this matter. (R. Doc. 41 at 7-10). Defendants next argue that even if Delaware law applies, Plaintiff has not asserted an actionable *Caremark* claim against Neyland under either the original Petition or the proposed First Amended Complaint. (R. Doc. 41 at 12-18). Defendants further argue that even if the First Amended Complaint states a viable *Caremark* claim, it constitutes an improper post-removal attempt to destroy diversity. (R. Doc. 41 at 18-21). Finally, Defendants argue that any *Caremark* claim against Neyland is prescribed. (R. Doc. 41 at 21-22).

In support of the Motion to Amend, Plaintiff asserts that to the extent the original Petition did not raise a viable claim under Delaware law, Plaintiff now seeks to cure the deficiencies by raising additional allegations in the First Amended Complaint. (R. Doc. 22-2; *see* R. Doc. 22-1). Plaintiff asserts that amendment is proper under Rule 15 of the Federal Rules of Civil Procedure.

In opposing the Motion to Amend, Defendants argue that Plaintiff's proposed amendment should be denied because it is an impermissible collateral attack on the Rehabilitation Order, which declared Excalibur Holdings to be a Louisiana insurer as a matter of law. (R. Doc. 34 at

6). Defendants further argue that the proposed amendment is futile because Louisiana law controls Plaintiff's breach of fiduciary duty claim. (R. Doc. 34 at 7; *see* R. Doc. 31-1 at 4-8). Defendants further argue that even if Delaware law controls, the amendment fails to state a *Caremark* claim and any alleged breach of fiduciary duty claim is prescribed. (R. Doc. 34 at 7-15). Finally, Defendants argue that leave to amend should not be allowed to divest the federal court of jurisdiction. (R. Doc. 34 at 15-16).

In reply, Plaintiff argues that the Motion to Remand should be granted because Neyland is a properly joined defendant: Excalibur Holdings is a foreign Delaware corporation, the Petition pleads an "utter failure" method of *Caremark* oversight liability, Neyland was a dual fiduciary of both Excalibur Holdings and Excalibur Insurance, and the claim is not prescribed. (R. Docs. 69, 72). Plaintiff also argues that the Motion to Amend is not a futile collateral attack on the Rehabilitation Order and the proposed amendment asserts an enforceable claim under Delaware law. (R. Docs. 57, 70, 71, 74).

III.    **Law and Analysis**

A.    **Choice of Law**

The Court must first resolve the preliminary issue of whether Louisiana law or Delaware law applies to Plaintiff's claims against Neyland as stated in the Petition. A federal court sitting in diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 620 (5th Cir. 2014) (citations omitted). There is no dispute Louisiana's choice of law principles apply in determining which state's substantive law governs Plaintiff's claims against Neyland. There is also no dispute that the substantive law of Louisiana and Delaware are different on the issues raised.

6

The Petition is silent on the source of law upon which Plaintiff seeks recovery from Neyland.[2] The broadest allegations in the Petition regarding Neyland assert that he breached his fiduciary duties to act with loyalty to, and in good faith and in the best interest of, Excalibur Holdings and Excalibur Insurance. (Petition ¶¶ 59-60). Plaintiff does not raise any allegations of fraud against Neyland, instead stating that he "breached his fiduciary obligations by negligently or grossly negligently failing to determine that the terms of the Bank of Tampa Loan for which they granted Pollick, as CEO, authority to enter into on behalf of Excalibur Insurance and Excalibur Holdings did not satisfy the requirements that the LDI set forth in the Consent Agreement." (Petition ¶ 62). Plaintiff further alleges that Pollick's conduct constitutes "willful misconduct" and he "acted grossly negligently, incompetently in many instances and deliberately in other instances, all in a manner that damaged Excalibur Holdings and Excalibur Insurance, their shareholders, and creditors." (Petition ¶ 63).

Accordingly, Plaintiff is raising claims against Neyland with respect to his relationship with Excalibur Holdings and (through the contractual assignment of Excalibur Insurance's claims) Excalibur Insurance.

The Court must "determine as best it can what [Louisiana's] highest court would decide regarding the appropriate choice of law rule." *Patin v. Thoroughbred Power Boats Inc.,* 294 F.3d 640, 646 (5th Cir. 2002) (citing *Howe v. Scottsdale Ins. Co.,* 204 F.3d 624, 627 (5th Cir. 2000)). Louisiana's conflict of law statutes mandate that the Court apply the law of the state whose "policies would be most seriously impaired if its law were not applied to that issue." *See* La. Civ. Code arts. 3515, 3539 & 3542. Applying the "internal affairs doctrine," the Fifth Circuit has

---

[2] As Defendants point out, Plaintiff generally asserts in the Petition that the substantive law is governed by Florida law pursuant to Louisiana's Conflict of Law provisions. (R. Doc. 21 at 23; *see* Petition ¶ 88). This assertion is not made, however, specifically with respect to the claims raised against Neyland. Neither Plaintiff nor Defendants argue that Florida law applies to the claims at issue.

specifically concluded that the "the law of the place where the corporation was incorporated [governs] disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties." *Torch Liquidating Trust ex. rel. Bridge Assocs. L.L.C. v. Stockstill,* 561 F.3d 377, 385 n. 7 (5th Cir. 2009) (citations omitted); *D & J Tire, Inc. v. Hercules Tire & Rubber Co.*, 598 F.3d 200, 204 (5th Cir. 2010); *see Atherton v. FDIC,* 519 U.S. 213, 224 (1997) (noting that the "internal affairs doctrine" is "a conflict of laws principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands").

The application of the internal affairs doctrine to the choice of law analysis in this action is challenged by Defendants in the context of a Rule 12(b)(6) Motion to Dismiss filed by Neyland and Scognamiglio. (R. Doc. 31).[3] Defendants assert that district courts within the Fifth Circuit have held that "the internal affairs doctrine, to the extent it conflicts with the Louisiana conflicts of law analysis, does not control." (R. Doc. 31-1 at 8) (quoting *Zloop, Inc. v. Phelbs Dunbar*, No. 18-31, 2019 WL 1978357, at *32-33 & n. 68 (W.D. La. Mar. 27, 2019) (citation omitted)). Those decisions are distinguishable as they stand for the proposition that the internal affairs doctrine does not apply to non-corporate officers and directors. *Zloop*, 2019 WL 1978357, at *10 (internal affairs doctrine does not apply to corporate lawyers); *see also Broyles v. Cantor Fitzgerald & Co.*, No. 10-854, 2014 WK 6886158 (M.D. La. Dec. 8, 2014) (internal affairs doctrine does not apply to claims of "aiding and abetting the breach of a fiduciary duty" brought against a stockbroker). There is no dispute here that Neyland is a director of both Excalibur Holdings, which is incorporated in Delaware, and Excalibur Insurance, which is incorporated in Louisiana.

---

[3] This Motion to Dismiss remains pending before the district judge.

Defendants challenge the application of the internal affairs doctrine on two grounds, both related to the underlying nature of the Rehabilitation Proceeding and the resulting Rehabilitation Order. In short, Defendants argue that because the Rehabilitation Order provides that Excalibur Holdings is an "insurer" under Louisiana's Insurance Code (Title 22 of the Louisiana Revised Statutes), and the Rehabilitation Order implicitly recognizes Excalibur Holdings and Excalibur Insurance comprise a "single business enterprise" sharing the same corporate personality, Excalibur Holdings should therefore be treated as a Louisiana corporation for the purposes of the instant breach of fiduciary duty claims brought against Neyland. (R. Doc. 41 at 7-10; *see* R. Doc. 31-1 at 4-8). Accordingly, while Plaintiff seeks to have all claims against Neyland be governed by Delaware law (in light of his position in Excalibur Holdings), Defendants seek to have all claims against Neyland be governed by Louisiana law (in light to his position in Excalibur Insurance and the nature of the Rehabilitation Proceeding).

The Court is aware that Plaintiff is proceeding as Rehabilitator of Excalibur Holdings in light of Louisiana's rehabilitation scheme. While the Rehabilitation Order treats Excalibur Holdings as an insurer under Louisiana law, however, it does not have the effect of completely restructuring that corporations' place of incorporation for the purposes of a breach of fiduciary duty claim brought against a corporate officer. Indeed, the Notice of Removal acknowledges that Excalibur Holdings is incorporated in the State of Delaware and has a principal place of business in Louisiana, therefore making it a citizen of Delaware and Louisiana for the purposes of diversity jurisdiction. (R. Doc. 1 at 4).

Defendant argues that Louisiana law applies to the claims brought against Neyland in light of Louisiana's general and residual choice of law provision, which states that "an issue in a case having contacts with other states is governed by the law of the state whose policies would

be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3515.

Defendants argue that it is "beyond peradventure that the substantial policies of the State of

Louisiana are implicated by the subject claims, and that those policies would be seriously

impaired if its law were not applied to the claim," in light of the following:

> (1) Plaintiff is a Louisiana public officer asserting a claim derived from
> Louisiana's insurance regulatory scheme; (2) Neyland is a Louisiana
> domiciliary; (3) both of the Excalibur companies had their offices in Louisiana; (4) both of the
> Excalibur companies were conducting the business of insurance in Louisiana,
> subject to the regulatory jurisdiction of the Commissioner of Insurance; (5) both
> of the Excalibur companies were part of an insurance company holding system,
> and thus subject to specific statutory limitations and requirements concerning the
> conduct of their business; and (6) the claim in question involves a determination
> of the standard of care applicable to oversight and management of a Louisiana
> insurer. Additionally, Excalibur Holdings remains subject to the Rehabilitation
> Proceeding (a proceeding commenced ostensibly for the benefit of "its"
> policyholders), and thus Plaintiff is proceeding herein under the aegis of
> Louisiana statutory scheme which is comprehensive and exclusive in scope and
> supersedes general Louisiana law.

(R. Doc. 31-1 at 7). The foregoing factors focus largely on the nature of the Rehabilitation

Proceeding – which the Court has rejected as a basis for concluding that Excalibur Holdings

should be treated like a Louisiana corporation – and with Excalibur Holding's and Neyland's

contacts with the State of Louisiana. The factors ignore Delaware's policy interest in regulating

the relationships between corporations incorporated in that State and its officer and directors.

Outside of the Rehabilitation Proceeding, Louisiana has no general interest in regulating the

internal relationships of foreign corporations. Indeed, the Louisiana Business Corporation Act

(Title 12 of the Louisiana Revised Statutes) provides that "[e]xcept where express reference is

made to foreign corporations, [the Louisiana Business Corporation Act] does not apply to foreign

corporations" not incorporated in the State of Louisiana. La. R.S. 12:1-1702.[4]

---

[4] Defendants assert that the provisions of the Louisiana Business Corporation Act applies to Plaintiff's claims in light of La. R.S. 22:69. (R. Doc. 41 at 9). The provisions of the Louisiana Business Corporation Act relied upon by

While the Rehabilitation Order found that Excalibur Holdings and Excalibur Insurance "constitute an insurer as defined in and under Louisiana law" (R. Doc. 41-1 at 1), it did not hold that Excalibur Holdings is a Louisiana corporation for all purposes. Having considered the internal affairs doctrine, relevant Fifth Circuit precedent, and the general principles of Louisiana's conflict of laws, the Court finds that with respect to claims raised against Neyland and his fiduciary duties to Excalibur Holdings, Delaware's policies would be more seriously impaired than Louisiana's policies if its laws were not applied to the instant issue. The Court concludes that Delaware law applies to Plaintiff's breach of fiduciary duty claims with respect to Neyland and his fiduciary duties as a director of Excalibur Holdings.[5]

## B.    Subject Matter Jurisdiction at the Time of Removal

### 1.    Standards for Improper Joinder

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1).[6] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the

---

Defendants for a finding that there is no possibility of recovery against Neyland – La. R.S. 12:1-831 and 12:1-833 – do not make any reference to foreign corporations.

[5] That leaves any asserted claims against Neyland with respect to his fiduciary duties as a director of Excalibur Insurance, which is a Louisiana corporation. Louisiana choice-of-law rules recognize the concept of dépeçage, which requires an issue-by-issue analysis that may result in the laws of different states being applies to different issues in the same dispute. *Lonzo v. Lonzo*, 231 So. 3d 957, 968 (La. App. 4th Cir. 2017); *see* La. C.C. art. 3515, cmt. (d). Under the internal affairs doctrine, Louisiana law applies to any assigned claim that Neyland breached his fiduciary duties as director of Excalibur Insurance. This issue is moot, however, as Plaintiff raises no arguments in support of a finding that Neyland is properly joined because the Petition states a claim for breach of fiduciary duties with respect to Excalibur Insurance (as opposed to Excalibur Holdings).

[6] There is no dispute that the amount in controversy requirement is satisfied. Accordingly, the Court will turn directly to the issue of whether Neyland was improperly joined as a defendant.

complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed . . ."). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co*., 491 F.3d 278, 281-82 (5th Cir. 2007). The removing party has the burden of proving federal diversity jurisdiction. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003). To meet its burden, the removing party must show an "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis,* 326 F.3d at 646-47. As the removing Defendants have not alleged actual fraud in Plaintiff's pleading of jurisdictional facts, the Court will only consider the latter test for improper joinder. In that situation, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 573-74 (5th Cir. 2004).

Generally, a court should "conduct a Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. However, where a plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether a non-diverse defendant has been improperly joined. *Id.* Although

the court may consider "summary judgment-type evidence in the record," it must resolve all

disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff.

*Travis*, 326 F.3d at 649.

"[A] court *may* choose to use either one of these two analyses, but it *must* use one and

only one of them, not neither or both." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy*

*Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016). If a court determines that the non-diverse party has

been improperly joined under a Rule 12(b)(6)-type analysis, that party must be dismissed without

prejudice. *Id*. at 209. This dismissal is based on lack of subject matter jurisdiction and does not

operate as an adjudication on the merits. *Id*. at 210. When applying the improper joinder test, a

federal court reads the original State court pleading through the lens of the federal pleading

standards. *Id.* at 203.

### 2. Rule 12(b)(6) Standard

Given that Plaintiff has not identified "discrete facts that would determine the propriety

of joinder," the Court will apply a Rule 12(b)(6)-like analysis.[7]

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal

standard set forth in Rule 8, which requires "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6)

motion, a pleading's language, on its face, must demonstrate that there exists plausibility for

entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining

whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556

---

[7] Plaintiff has sought to seek amendment of the *allegations* in the original Petition. Plaintiff has not submitted any affidavits or other summary judgment-type evidence in support of a finding that Neyland was properly joined as a defendant.

U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

### 3.    Whether Plaintiff Stated a Claim Against Neyland Under Delaware Law in the Original Petition

Delaware law recognizes a cause of action called a *Caremark* claim: "Generally where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation . . . only a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability. *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996). The Delaware Supreme Court has repeatedly characterized Caremark claims as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (quoting *Caremark*, 698 A.2d at 967). Under *Caremark* and its progeny, "a showing of bad faith is a necessary precondition to director oversight liability." *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017) (emphasis in original and quotation marks omitted). "Pleadings, even specific pleadings, indicating that directors did a poor job of overseeing risk in a poorly-managed corporation do not imply director bad faith." *In re Gen. Motors Co. Deriv. Litig.*, No. 9627, 2015 WL 3958724, at *17 (Del. Ch. June 26, 2015).

The Supreme Court of Delaware held that a *Caremark* claim can be established when "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b)

having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*, 911 A.2d at 370. "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." *Id*. "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *Id*. Critically, a violation of Caremark's duty to monitor breaches only the duty of loyalty, not the duty of care." *Kravitz as Tr. of Aegean Litig. Tr. v. Tavlarios*, No. 19-8438, 2020 WL 3871340, at *7 (S.D.N.Y. July 8, 2020) (citing *Stone*, 911 A.2d 370) ("It follows that because a showing of bad faith conduct . . . is essential to establish director oversight liability, the fiduciary duty violated by that conduct is the duty of loyalty.").[8]

In support of a finding that Neyland was properly joined as a defendant, Plaintiff asserts that Paragraphs 59, 60, and 62, when read in conjunction, state a *Caremark* claim under Delaware law: "Reading these three paragraphs together, it is plain that the Commissioner has expressly pled in his original petition that Neyland breached his duty of loyalty, including his duty to exercise oversight, by failing, *inter alia*, to determine that the terms of the Bank Loans did not satisfy the requirements that the LDI set forth in the Consent Agreement." (R. Doc. 23-1 at 11-12). Plaintiff asserts that he has established an "utter failure" claim under the first prong detailed in *Stone*. (R. Doc. 69 at 4).[9] Such a claim looks to "whether the complaint pleads facts

---

[8] Plaintiff appears to concede that the Petition does not state a claim that Neyland breached his duty of care. "A claim for breach of the duty of care . . . asserts that a director or officer of the corporation made an uninformed business decision." *Kravitz*, 2020 WL 3871340, at *7 (citing *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 52 (Del. 2006) (requiring breach of duty of care claims to rebut the presumption that "in making a business decision the directors of a corporation acted on an informed basis" (emphasis added and quotation marks omitted)). The Petition does not allege that Neyland made any uninformed business decisions that would constitute a breach of the duty of care.

[9] Plaintiff raises no arguments in support of a finding the Petition raises a claim under the second prong, namely that Neyland consciously failed to monitor or oversee the operations of Excalibur Holdings pursuant to implemented

supporting a reasonable inference that the board did not undertake good faith efforts to put a board-level system of monitoring and reporting in place." *Marchand v. Barnhill*, 212 A.3d 805, 821 (Del. 2019). "[A] director may be held liable if she acts in bad faith in the sense that she made no good faith effort to ensure that the company had in place any 'system of controls.'" *Id*. at 805.

"Pleading such an utter failure is a formidable challenge: the Delaware Supreme Court was 'deliberate in its use of the adverb 'utterly' -- a 'linguistically extreme formulation' -- to set the bar high' for pleading a Caremark claim." *Kravitz as Tr. of Aegean Litig. Tr. v. Tavlarios*, No. 19-8438, 2020 WL 3871340, at *9 (S.D.N.Y. July 8, 2020) (quoting *Rojas on behalf of J.C. Penney Co., Inc. v. Ellison*, No. 2018-755, 2019 WL 3408812, at *9 (Del. Ch. July 29, 2019)). The plaintiff must allege facts from which it is plausible to infer that the directors "made no effort at all" to implement a board-level system of monitoring. *Marchand*, 212 A.3d at 821. The directors discharge their duty to monitor the corporation so long as they "try" to implement such a system. *Id*. Consequently, "plaintiffs usually lose because they must concede the existence of board-level systems of monitoring and oversight such as a relevant committee, a regular protocol requiring board-level reports about the relevant risks, or the board's use of third-party monitors, auditors, or consultants." *Id*. at 823.

The Court finds the relevant allegations in the Petition, even when viewed most favorably on behalf of Plaintiff, are conclusory and do not meet the federal pleadings standards. *See Iqbal*,

---

systems or controls. *See Stone*, 911 A.2d at 370. To satisfy this burden, Plaintiff may "identify 'red flags,' obvious and problematic occurrences, that support an inference that the [corporation's] directors knew that there were material weaknesses in [the corporation's] internal controls and failed to correct such weaknesses." *Vitellone v. Evans*, No. 13-1887, 2013 WL 6806179, at *6 (S.D. Tex. Dec. 20, 2013) (quoting *Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963, 983 (Del. Ch. 2013). There is nothing in the Petition to suggest or permit the Court to infer that Neyland became aware of any "red flags" prior to the time he reported Pollick's actions. *See In re Citigroup Inc. Shareholders Litig.*, No. 19827, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003); *see also Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) (dismissing a *Caremark* claim because of a failure to allege that directors had knowledge of, or were on notice of, any red flags related to the company's financial controls).

556 U.S. at 678; *Twombly*, 550 U.S. at 557. The most specific allegation in the Petition with respect to Neyland asserts that he breached his fiduciary duties by failing to determine that the terms of the Bank of Tampa Loan "did not satisfy the requirements that the LDI set forth in the Consent Agreement." (Petition ¶ 62). These conclusionary allegations do not allege when Neyland knew or should have known that the Bank of Tampa Loan did not satisfy the requirements. Such conclusory allegations are insufficient to demonstrate a conscious disregard for his responsibilities. *Stone*, 911 A.2d at 370. Indeed, Paragraph 25 provides that Neyland was unaware of the deficiencies of the loan at issue on or before April of 2018. (Petition ¶ 25). The Petition further alleges that on April 12, 2018, Neyland informed the Boards of Excalibur Holdings and Excalibur Insurance of the violation of the Consent Agreement and other issues raised by the Bank of Tampa Loan. (Petition ¶ 51). At the most, the Petition alleges that had Neyland known that the Bank of Tampa Loan violated the terms of the Consent Agreement in April of 2016, he would have taken corrective action and/or would have notified the LDI of the violation. (Petition ¶ 54).

The Petition does not contain factual allegations with respect to any specific lack of any board-level systems of monitoring and oversight at Excalibur Holdings, much less a "sustained or systematic failure" on the part of Neyland to exercise oversight. Plaintiff alleges a single instance of alleged illegal or fraudulent conduct, *i.e.*, the failure of the Bank of Tampa Loan to comply with the Consent Agreement. (Petition ¶¶ 22-61). The single alleged failure of Neyland to determine Pollick's alleged wrongdoing and report that wrongdoing in a timely manner cannot sustain a *Caremark* claim. Contrary to Plaintiff's assertions, Plaintiff's underline failure to allege in the Petition underline the absence of board-level systems of monitoring and oversight does not support a finding that Plaintiff has sufficiently pled an "utter failure" claim under *Caremark*. The absence

of specific allegations regarding the lack of board-level systems of monitoring and oversight indicate that Plaintiff has failed to state a claim. Plaintiff raises no factual allegations in support of a finding that Neyland acted bad faith "in the sense that [he] made no good faith effort to ensure that the company had in place any 'system of controls'" that would support an "utter failure" claim under *Caremark*. *Marchand*, 212 A.3d at 805.

The Petition does not state an "utter failure claim under *Caremark* when viewed through the lens of the federal pleading standard. There is no possibility of recovery against Neyland based on the allegations in the Petition. Neyland was, therefore, improperly joined as a defendant and must be dismissed without prejudice.

### 4. Whether Plaintiff Should be Allowed to Amend to Adequately Plead a *Caremark* Claim Against Neyland

#### i. Improper Joinder is Determined on the Pleadings at the Time of Removal

In the alternative to a finding that Neyland was properly joined in the original Petition, Plaintiff requests the opportunity to amend the original Petition to properly set forth a *Caremark* claim against Neyland. (R. Doc. 23-1 at 12-13; *see* R. Doc. 22). Plaintiff's proposed Amended Complaint contains allegations concerning the alleged failure of the directors of Excalibur Holdings (including Neyland) to monitor Excalibur Insurance or set up some system for overseeing Excalibur Insurance. (*See* R. Doc. 22-1 at 15-16, Paragraphs 52-56). Plaintiff asserts that the Court should allow amendment to conform with the federal pleading standards upon removal.

In support of this assertion, Plaintiff relies upon *Pena v. City of Rio Grande City*, 879 F.3d 613, 616 (5th Cir. 2018), which found a district court erred in ruling on the merits without providing the plaintiff an opportunity to amend to conform with federal pleading standards. The

*Pena* decision, however, did not involve a claim of improper joinder. Instead, it "involved a motion for judgment on the pleadings in a case that was removed based on federal question jurisdiction, and the Fifth Circuit's conclusion that the district court should have permitted the plaintiff to amend her state court pleadings to conform to federal pleading standards had no jurisdictional implications." *Pastor v. Guardian Transition Inc.*, No. 19-2406, 2019 WL 7879752, at *2 (S.D. Tex. Sept. 26, 2019). The *Pena* decision has no bearing on whether amendment should be allowed in the context of a removal based on improper joinder.

The Fifth Circuit has made it clear that the improper joinder determination must be based on the pleadings as they existed at the time of removal. *See Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256, 263-64 (5th Cir. 1995). Any post-removal amendment to assert new and potentially plausible claims against a non-diverse defendant "cannot divest a federal court of jurisdiction" that already exists. *Id.* at 264. In short, "[a] complaint amended post-removal cannot divest a court of jurisdiction." *Id.* at 264.

As discussed above, the Court finds that Plaintiff's original Petition filed in state court – the operative pleading at the time of removal – controls the Court's determination of whether Neyland was improperly joined at the time of removal. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Cavallini*, 44 F.3d at 264. Accordingly, the Court denies Plaintiff's Motion to Amend to the extent Plaintiff is seeking amendment *prior* to a determination of whether the Court has subject matter jurisdiction. The Court will not consider the proposed pleading in the context of determining whether Neyland was improperly joined as a defendant based upon the allegations in the original Petition at the time of removal.

### ii. Amendment is Otherwise Improper to Destroy Diversity Jurisdiction

As discussed above, Neyland must be dismissed without prejudice for the purposes of the jurisdictional analysis based upon the allegations in the original Petition. The question remains whether Plaintiff should be allowed to amend the pleadings for the purposes of joining Neyland as a proper defendant. Having considered the law and the briefing of the parties, the Court finds that the Court properly exercises its discretion in denying amendment.

Amendments to pleadings are generally governed by Rule 15 of the Federal Rules of Civil Procedure. Under Rule 15, after the period for amendment as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). In determining whether to grant leave, a court may consider several factors, including among other things, the movant's "bad faith or dilatory motive" and the "futility" of the amendment. *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Since joinder of a nondiverse defendant after removal would destroy diversity jurisdiction and require remand, a court has discretion to permit or deny joinder. *See* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the

action to the State court."). When an amendment seeks to add a nondiverse party that would destroy jurisdiction altogether in a removed action, the court must balance the factors as set forth in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987). The court should "scrutinize that amendment more closely than an ordinary amendment" and should generally consider four factors to determine whether the amendment is appropriate: "[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities." *Id*. at 1182. If the court permits the addition of a nondiverse defendant, it must remand the action to the state court. *Id*.

Allowing Plaintiff to amend the pleadings under Section 1447(e) to state a claim against Neyland, a non-diverse defendant who must be dismissed without prejudice for improper joinder, may be contrary to the principles outlined in *Cavallini*. *See DTND Sierra Investments, LLC v. Bank of New York Mellon Tr. Co.*, No. 12-1014, 2013 WL 432923, at *5 (W.D. Tex. Feb. 4, 2013) ("[P]ost-removal filing of an amended complaint to state a claim against a pre-existing, non-diverse, improperly joined defendant would defeat removal" as disallowed by *Cavallini*). Nevertheless, amendment may be allowed where the amendments do not assert a new legal theory not alleged in the state court complaint. *See Cavallini*, 44 F.3d at 263-64. Accordingly, courts have applied Section 1447(e) and the *Hensgens* factors to determine whether amendment should be allowed to state a claim against a dismissed defendant who was improperly joined. *See Planeta, LLC v. Scottsdale Ins. Co.*, No. 18-3323, 2019 WL 3067111, at *3 (S.D. Tex. Jan. 9, 2019) (denying remand because the primary purpose of the amendment was to defeat diversity jurisdiction and amendment was otherwise futile); *Peveto v. Invista S.A. R.L.*, No. 16-CV-3,

2016 WL 4942047, at *10-11 (E.D. Tex. Aug. 19, 2016), *report and recommendation adopted*, 2016 WL 4917565 (E.D. Tex. Sept. 15, 2016) (same).

Here, Plaintiff makes no attempt to address Section 1447(e) or the *Hensgens* factors in support of amendment. While Plaintiff was not dilatory in seeking amendment, the fact that Plaintiff simultaneously filed a Motion to Amend and Motion to Remand demonstrates that the sole purpose of seeking amendment is to defeat diversity jurisdiction by amending claims against an improperly joined defendant after removal. *See Planeta*, 2019 WL 3067111, at *3, *Peveto* 2016 WL 4942047, at *10; *see also Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, No. 09-1596, 2010 WL 1491422, at *5 (N.D. Tex. Apr. 13, 2010) ("Plaintiffs amended their complaint and contemporaneously filed their motion to remand. The timing of these two acts suggests that the purpose of the amendment was to defeat jurisdiction."). Plaintiff attempts to "cure" the pleading defects directly after removal without proceeding with additional discovery is further indication that the sole purpose of amendment is to destroy diversity jurisdiction. *See Criswell v. Wal-Mart Stores, Inc.*, No. 09-502, 2009 WL 5061826, at *2 (E.D. Tex. Dec. 15, 2009). Amendment should be denied because it is sought solely to defeat diversity jurisdiction. *Planeta*, 2019 WL 3067111, at *3. Furthermore, Plaintiff would not suffer any irreparable injury if amendment is not allowed. Plaintiff may reassert the claim against the improperly joined defendant Neyland in a state court proceeding.

Given the foregoing, the Court properly exercises its discretion under Section 1447(e) in denying leave to amend the pleadings to assert a breach of fiduciary claim against Neyland, who is subject to dismissal without prejudice from this lawsuit on the basis of improper joinder. The Court need not reach an analysis of whether the amended allegations are futile.

**IV.    Conclusion**

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion for Remand (R. Doc. 23) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Dennis P. Neyland

be **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Leave to File First

Amended and Restated Petition for Damages and Jury Demand (R. Doc. 22) be **DENIED.**

Signed in Baton Rouge, Louisiana, on October 2, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**