## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JAMES J. DONELON,**                                              **CIVIL ACTION**
***Commissioner of Insurance for the***
***State of Louisiana, in his Capacity as***
***Rehabilitator of Excalibur National***
***Holdings, Inc.***

**VERSUS**

**JEFFREY C. POLLICK, ET AL.**                         **NO. 20-00177-BAJ-RLB**

## RULING AND ORDER

Before the Court are multiple motions to dismiss. Defendants Katrina Rigali Trump, The Bank Of Tampa, and Seacoast National Bank ("Seacoast Bank") (collectively, the "Banking Defendants") each seek dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2). (Docs. 15, 18, 21). Defendant Jeffrey Pollick also seeks dismissal for lack of personal jurisdiction. (Doc. 29). As an alternative to dismissal, Pollick and Seacoast Bank propose transferring this action to the U.S. District Court for the Middle District of Florida. (Docs. 21, 29).

Additionally, Defendants Dennis Neyland and Antonio Scognamiglio jointly seek dismissal for failure to state a claim under Rule 12(b)(6).[1] (Doc. 31).

Plaintiff opposes Defendants' motions (*see* Docs. 60, 61, 79, 81), and Defendants have filed reply memoranda in further support of their respective positions (*see* Docs. 75, 76, 77, 84, 86).

---

[1] Although Neyland and Scognamiglio filed their motion to dismiss jointly, the Court has already dismissed Neyland from this action for improper joinder. (Docs. 87, 98). As such, the motion to dismiss is moot as to Neyland, and will be denied *in part* on that basis.

Also before the Court are various motions seeking prioritized consideration of Defendants' motions for dismissal. (*See* Docs. 24, 30, 38).[2]

For reasons to follow, the Court determines that Plaintiff has failed to state an actionable claim against Scognamiglio, and that Scognamiglio must be dismissed with prejudice from this action.  The Court further determines that it may exercise personal jurisdiction over Pollick, but not the Banking Defendants. Rather than dismissing the Banking Defendants without prejudice, however, the Court determines that the interests of justice favor transferring this action to the U.S. District Court for the Middle District of Florida under 28 U.S.C. § 1631.

## I.    ALLEGED FACTS

The relevant factual background is largely set forth in the Magistrate Judge's October 2, 2020 Report and Recommendation (Doc. 87 at 1-4), which the Court approved and adopted by Order dated December 11, 2020. (Doc. 90). For efficiency, the Court incorporates that portion of the Magistrate Judge's Report and Recommendation here.

To recap, Plaintiff[3] seeks to recover in excess of $7 million against Pollick, Neyland, and Scognamiglio, officers and directors of the failed Excalibur National Insurance Company, and its corporate parent, Excalibur National Holdings, Inc. (collectively, "Excalibur"); Trump, The Bank of Tampa, and Seacoast Bank, bankers

---

[2] These motions are largely mooted by this Order and, accordingly, will be denied on that basis.

[3] "Plaintiff" is James Donelon, Commissioner of Insurance for the State of Louisiana, in his capacity as Rehabilitator of Excalibur National Holdings, Inc., through his duly appointed Receiver, Billy Bostick.

that allegedly aided Excalibur's demise; and Capital Specialty Insurance Company ("CSIC"), Excalibur's D&O insurance provider. Plaintiff contends that Excalibur's financial ruin is the result of its failure to maintain capitalization requirements mandated by a Consent Agreement with the Louisiana Department of Insurance ("LDI"), which ultimately resulted in a Permanent Order of Rehabilitation placing Excalibur into Receivership on August 30, 2019.

More specifically, Plaintiff alleges that under the Consent Agreement, Excalibur agreed "to contribute and maintain a total of $8 million in capital" in return for a Certificate of Authority ("COA") permitting Excalibur to issue insurance in Louisiana. The Consent Agreement further specified that Excalibur's capitalization would consist of a $5 million initial contribution, and an additional infusion of $3 million in "unencumbered capital" within 30 days of receiving the COA. (Doc. 1-1 at ¶¶ 14-15).

Excalibur satisfied its initial $5 million capitalization requirement, but then failed to timely raise the additional $3 million. Plaintiff alleges that this failure prompted Pollick, Excalibur's President, CEO, and Board Chair, to confect a loan transaction with The Bank of Tampa (the "Bank of Tampa Loan"), making it appear as if Excalibur had satisfied its capitalization requirements when, in fact, it had not. (*Id.* at ¶¶ 18-30). Plaintiff alleges that Pollick maintained Excalibur's ruse for more than two years before two of Excalibur's Directors, Neyland and Scognamiglio, discovered it in the course of a LDI audit. (*Id.* at ¶¶ 50-53). Plaintiff alleges that Trump, the loan officer assigned to the Bank of Tampa Loan, assisted Pollick's ruse

3

by making various false statements indicating that Excalibur had met its capitalization requirements, first in her position at The Bank of Tampa, and later in her new role at Seacoast Bank.[4] (*Id.* at ¶ 31). Finally, Plaintiff alleges that after Excalibur entered receivership, CSIC arbitrarily denied Excalibur's claim under its D&O policy for losses resulting from Pollick's, Neyland's, and Scognamiglio's acts and omissions, in violation of CSIC's duty to adjust Excalibur's claim "fairly and promptly." (*Id.* at ¶¶ 57, 92-101).

The primary question at hand is whether this case belongs in this jurisdiction. Plaintiff calls the issue to attention by expressly asserting that the conduct at issue occurred in Florida. In relevant part, Plaintiff alleges:

> Although Excalibur Holdings and Excalibur insurance were based in Louisiana, the Banking Defendants were 100% based in Florida. The majority of the directors were domiciled in Florida. Bank of Tampa and NorthStar Bank were chartered in Florida; Seacoast Bank was federally chartered but based solely in Florida since 1934. The lending contracts at issue in this case were negotiated in Florida and were probably signed by both parties – but certainly by the lenders – in Florida. On information and belief, Excalibur Holdings and Excalibur Insurance went to the Florida lenders, and not vice-versa, to obtain the loans at issue, and their relationship was centered in Florida. The loan contracts and issuance of the CDs were performed entirely in Florida. Furthermore, at least some of the delictual acts alleged in this Petition occurred in Florida. As to which state has stronger relevant policies against "deterring wrongful conduct and repairing the consequences of such acts," Plaintiff shows that Florida has a longer statute of limitations than Louisiana and allows punitive damages while Louisiana does not.

(*Id.* at ¶ 89).

---

[4] Plaintiff alleges that Seacoast Bank, as successor to non-defendant Northstar Bank, acquired the Bank of Tampa Loan when it hired Trump away from The Bank of Tampa. (*See* Doc. 1-1 at ¶ 11(f)).

## II.    PROCEDURAL HISTORY

On February 19, 2020, Plaintiff, as Excalibur's rehabilitator, filed his original Petition in the Nineteenth Judicial District for the Parish of East Baton Rouge, Louisiana. (Doc. 1-1). Based on the allegations outlined above, the Petition asserts claims of breach of fiduciary duty against Pollick, Neyland, Scognamiglio, and CSIC, (*id*. at ¶¶ 58-68); aiding breach of fiduciary duty, aiding fraud, and aiding negligent misrepresentation against the Banking Defendants, (*id*. at ¶¶ 69-83); and bad faith insurance practices against CSIC, (*id*. at ¶¶ 92-101). Further, Plaintiff seeks punitive damages under applicable Florida law against Pollick, Neyland, Scognamiglio, and the Banking Defendants. (*Id*. at ¶¶ 84-91).

On March 24, 2020, Defendants removed this action to this Court solely on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1 at ¶8). In relevant part, Defendants' removal papers asserted that complete diversity among the parties was satisfied, despite Plaintiff and Neyland each being citizens of Louisiana, because "Neyland was improperly joined in this suit." (Doc. 1 at ¶ 13). Specifically, Defendants argued that the Petition failed to allege an actionable claim against Neyland, and thus Neyland's citizenship must be ignored when assessing the requirement of complete diversity. (*Id*. at ¶¶ 13, 35-47).

On March 26, 2020, CSIC filed its Answer to Plaintiff's Petition. (Doc. 6). Relevant here, CSIC's Answer does *not* raise lack of personal jurisdiction as a defense to Plaintiff's claims.[5]

---

[5] On April 17, 2020, CSIC amended its Answer pursuant to Rule 15(a)(1)(A). (Doc. 19). CSIC's Amended Answer also does not raise lack of personal jurisdiction as a defense. (*Id*.).

On April 14, 2020, Trump filed her Rule 12(b)(2) Motion To Dismiss For Lack Of Personal Jurisdiction. (Doc. 15). Trump argues that Plaintiff's claims against her must be dismissed because she is a resident of Florida and has only visited Louisiana once in her lifetime, and because her alleged conduct—all related to the Bank of Tampa Loan—occurred exclusively in Florida and/or "international waters," and did not involve any attempt to "initiate communication" with parties in Louisiana. (*See* Doc. 15-1 at 1-2).

After Trump filed her motion, The Bank of Tampa, Seacoast Bank, and Pollick each filed their own motions to dismiss for lack of personal jurisdiction in quick succession. (Docs. 18, 21, 29). These Defendants' arguments are essentially identical to Trump's. They contend that their contacts to Louisiana are virtually nonexistent; their alleged activities that resulted in Excalibur's demise occurred in Florida; and they did not intentionally direct any activities or communications towards Louisiana.

As an alternative to dismissal, Seacoast Bank and Pollick propose that the Court should transfer this action to the U.S. District Court for the Middle District of Florida, because, *inter alia*, Plaintiff's own allegations establish that nearly all of the actions underlying Plaintiff's claims occurred in the Middle District of Florida. (Docs. 21-1 at 16-19; 29-1 at 15-23).

On April 23, 2020, Plaintiff filed his Motion to Remand. (Doc. 23). Relevant here, Plaintiff argued that Defendants had failed to establish diversity jurisdiction, and that remand was required, because Neyland is a citizen of Louisiana, and, contrary to Defendants' position, the Petition establishes an actionable breach of

fiduciary duty claim against Neyland under applicable Delaware law. (Doc. 23-1 at 3-4). Thus, according to Plaintiff, Neyland destroyed diversity.

Also on April 23—the same day that Plaintiff filed his Motion to Remand—Plaintiff filed his Motion For Leave To File First Amended And Restated Petition For Damages And Jury Demand (Doc. 22) (the "Motion for Leave to Amend"). Plaintiff's stated purpose for seeking amendment was to add allegations regarding Neyland's conduct to "cur[e] any alleged pleading defect," thereby "depriv[ing] this Honorable Court of subject matter jurisdiction." (*Id.* at 2). Relevant here, Plaintiff's proposed Amended Petition also included new allegations against Scognamiglio. (*See* Doc. 22-1 at ¶ 70).

On April 30, 2020, Neyland and Scognamiglio filed their joint motion to dismiss. (Doc. 31). These Defendants sidestep the issue of personal jurisdiction, and instead argue that Plaintiff's claims against them must be dismissed under Rule 12(b)(6) because the Petition fails to establish an actionable breach of fiduciary duty claim under applicable Louisiana law. (Doc. 31-1 at 8-9). Alternatively, Neyland and Scognamiglio contend that any actionable breach of fiduciary duty claim is prescribed. (*Id.* at 9-10).

Plaintiff opposes Defendants' various motions to dismiss, contending that the Petition states actionable claims against all Defendants, and, further, that personal jurisdiction is satisfied because Plaintiff's claims arise from Defendants' actions targeted at Louisiana. (*see* Docs. 60, 61, 79, 81). Alternatively, Plaintiff contends that even if he currently cannot establish personal jurisdiction over all Defendants, he

should be allowed to conduct discovery aimed at establishing personal jurisdiction. (Doc. 60 at 10; *see also* Doc. 61 at 2; Doc. 79 at 3).

On October 2, 2020, the Magistrate Judge issued a Report and Recommendation advising that Plaintiff's Motion for Leave to Amend and Motion to Remand should each be denied. (Doc. 87). Critical to the Court's analysis here, the Magistrate Judge concluded that Delaware law, not Louisiana law, applies to Plaintiff's breach of fiduciary duty claims against Neyland, (*id.* at 12); that under the applicable "Rule 12(b)(6)-like analysis," Plaintiff's original Petition failed to plead an actionable Delaware breach of fiduciary duty claim against Neyland, (*id.* at 13-17); and that Plaintiff's Motion for Leave to Amend should be denied because improper joinder is determined based on the Petition as it exists at removal, and because Plaintiff sought amendment specifically to destroy diversity jurisdiction, (*id.* at 18-23). As a result, the Magistrate Judge further recommended that Neyland should be dismissed without prejudice from this action. (*Id*). In reaching this conclusion, the Magistrate Judge did not consider whether Plaintiff's proposed amended allegations are futile. (*Id.* at 22).

By order dated December 11, 2020, the Court approved and adopted the Magistrate Judge's Report and Recommendation. As a result, Plaintiff's claims against Neyland have been dismissed without prejudice. (Doc. 98).

## III.    LAW AND ANALYSIS

Despite the lengthy procedural history detailed above, and multiple motions under review, the issues presently before the Court are straightforward: first, whether Plaintiff alleges an actionable claim for breach of fiduciary duty against

Scognamiglio; second, whether Plaintiff has established personal jurisdiction over Pollick and the Banking Defendants; and third, if personal jurisdiction as to all or some of these Defendants is lacking, whether the appropriate remedy is dismissal without prejudice, additional time for jurisdictional discovery, or transfer to the Middle District of Florida. The Court addresses these issues, in turn.

### A. Plaintiff fails to allege an actionable breach of fiduciary duty claim against Scognamiglio

First, the Court considers Scognamiglio's motion to dismiss for failure to state a claim under Rule 12(b)(6).[6] (Doc. 31). Plaintiff's allegations against Scognamiglio are essentially indistinguishable from his allegations against Neyland: Plaintiff contends that Scognamiglio breached his fiduciary duties to Excalibur by failing to determine that the Bank of Tampa Loan "did not satisfy the requirements that the LDI set forth in the Consent Agreement." (Doc. 1-1 at ¶ 62).

For the same reasons set forth in the Magistrate Judge's Report and Recommendation dismissing Plaintiff's breach of fiduciary duty claim against Neyland—which the Court incorporates by reference here—the Court determines that Plaintiff's breach of fiduciary duty claim against Scognamiglio is governed by Delaware law, and that the Petition's threadbare allegations fail to state an actionable claim under Delaware law. (*See* Doc. 19 at 6-19). As such, Plaintiff's claim against Scognamiglio must be dismissed.

The remaining question is whether to allow Plaintiff the opportunity to amend

---

[6] Again, the Court has already dismissed Neyland from this action for improper joinder, and thus the motion to dismiss will be denied as moot as to Neyland. (*See* Docs. 87, 98).

as to Scognamiglio. As noted, the Court previously denied Plaintiff's request to amend as to *Neyland*, an improperly joined Louisiana citizen, because improper joinder is based on the Petition as it exists at removal, and because Plaintiff's proposed amendment would destroy diversity jurisdiction. (Doc. 87 at 18-23). The same considerations do not apply to Scognamiglio, a properly joined Florida citizen. Thus, the Court must consider the issue that the Magistrate Judge expressly avoided: whether amendment would be futile.

When a complaint fails to state a claim, the Court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable"); *see also Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) ("Rule 15(a) requires a trial court to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend." (internal quotations omitted)).

Plaintiff seeks to impose director oversight liability on Scognamiglio under Delaware's *Caremark* doctrine, which provides that a breach of fiduciary duty can be established upon proof that "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone*

*ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006). Critically, "[i]n either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." *Id.*

Here, Plaintiff's proposed Amended Petition contains additional allegations, which, in the light most favorable to Plaintiff, establish that Scognamiglio failed to monitor Excalibur, and also failed to implement a system "to ensure compliance with financial obligations imposed by the Consent Agreement." (Doc. 22-1 at ¶¶ 52-56, 70). Missing, however, is any allegation that Scognamiglio *knew* he was not discharging his fiduciary obligations. Absent any such allegation regarding Scognamiglio's knowledge, Plaintiff's *Caremark* claim must fail. *Stone*, 911 A.2d at 370.

Accordingly, having taken into consideration Plaintiff's proposed Amended Complaint (Doc. 22-1), the Court determines that amendment would be futile, and dismisses Plaintiff's claims against Scognamiglio with prejudice.

### B. The Court maintains personal jurisdiction over Pollick, but lacks personal jurisdiction over the Banking Defendants

Next, the Court turns to Pollick's and the Banking Defendants' requests for dismissal for lack of personal jurisdiction or, alternatively, transfer to the Middle District of Florida. In assessing these requests, the Court considers Plaintiff's well-pleaded allegations, affidavits and other evidence submitted in support of Defendants' motions, and affidavits and other evidence submitted by Plaintiff in opposition to Defendants' motions.

#### i. Standard

Personal jurisdiction is "an essential element of the jurisdiction of a district

court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). "The plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). In considering a motion to dismiss for lack of personal jurisdiction, the Court must accept the plaintiff's "uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the U.S. Constitution. *Revell*, 317 F.3d at 469. Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction over Pollick and the Banking Defendants would offend federal due process. *See Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. R.S. § 13:3201(B)).

> The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice. Sufficient minimum contacts will give rise to either specific or general jurisdiction. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic. Specific jurisdiction arises when the

12

defendant's contacts with the forum arise from, or are directly related to, the cause of action.

*Revell*, 317 F.3d at 470.

Upon determining that it lacks personal jurisdiction over a foreign defendant, the Court has two options. The first option is to dismiss the foreign defendant without prejudice. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999). Alternatively, the Court may transfer the entire action "to any other such court … in which the action … could have been brought at the time it was filed." 28 U.S.C. § 1631; *see Harutyunyan v. Love*, No. 19-cv-41, 2019 WL 5551901, at *6 (E.D. La. Oct. 28, 2019) ("Although the Fifth Circuit has not squarely addressed this issue, it appears to this Court [that] the Fifth Circuit would agree that § 1631 authorizes transfers based on lack of subject matter jurisdiction, personal jurisdiction, or improper venue." (discussing *Dornbusch v. Comm'r*, 860 F.2d 611, 612 (5th Cir. 1988)).

### ii.    Discussion

Guided by these principles, the Court easily determines that it lacks personal jurisdiction over the Banking Defendants. To begin, Plaintiff's own, uncontroverted allegations establish a compelling basis to conclude that Plaintiff *cannot* establish sufficient minimum contacts giving rise to either specific or general jurisdiction. Recall, Plaintiff expressly alleges:

- "Although Excalibur Holdings and Excalibur insurance were based in Louisiana, [Trump, Bank of Tampa, and Seacoast Bank] were 100% based in Florida."

- "The majority of the [Excalibur's] directors were domiciled in Florida."

13

- "Bank of Tampa and NorthStar Bank were chartered in Florida; Seacoast Bank was federally chartered but based solely in Florida since 1934."

- "The lending contracts at issue in this case were negotiated in Florida and were probably signed by both parties – but certainly by the lenders – in Florida."

- "On information and belief, Excalibur Holdings and Excalibur Insurance went to the Florida lenders, and not vice-versa, to obtain the loans at issue, and their relationship was centered in Florida."

- "The loan contracts and issuance of the CDs were performed entirely in Florida. Furthermore, at least some of the delictual acts alleged in this Petition occurred in Florida."

- "As to which state has stronger relevant policies against 'deterring wrongful conduct and repairing the consequences of such acts,' Plaintiff shows that Florida has a longer statute of limitations than Louisiana and allows punitive damages while Louisiana does not."

(*Id.* at ¶ 89).

Further, the Banking Defendants' affidavits supporting their motions are entirely consistent with Plaintiff's allegations. Trump attests that she is a 37-year resident of Florida, and has visited Louisiana only once in her life (on a personal vacation in May 2017); has no assets, accounts, or property in Louisiana; has never worked in Louisiana; and, regarding the events at issue in this action, performed all work related to the Bank of Tampa loan in Florida and/or "international waters,"[7] and only responded to a handful of communications from the LDI. (*See* Doc. 15-2).

Similarly, Bank of Tampa, through its representative, Executive Vice President and Chief Administrative Officer Richard Junkermann, states that it is a

---

[7] In her affidavit, Trump states that the Bank of Tampa loan was "closed offshore of Florida in international waters to avoid certain transaction fees as permitted by Florida law." (*See* Doc. 15-2 at ¶ 12).

Florida corporation with offices solely in Florida; has no agents, employees, or property in Louisiana; does not conduct or solicit business in Louisiana; other than the loans at issue in this case, has only ever negotiated two transactions that even tangentially involve parties in Louisiana; and the Bank of Tampa loan was negotiated entirely in Florida and closed in international waters. (*See* Doc. 18-2).

Seacoast Bank, through its representative, Senior Vice President Richard Junkermann, states that it is a federally chartered bank with its headquarters and all branches based exclusively in Florida; also has no agents, employees, or property in Louisiana; does not conduct or solicit business in Louisiana; does not engage in substantial activity of any kind in Louisiana; and its involvement in this case is only the result of having hired Trump away from The Bank of Tampa and, in turn, having acquired the Bank of Tampa loan. (*See* Doc. 21-1).

Against this evidence (and his own allegations), Plaintiff submits a single affidavit from Excalibur's Receiver, Billy Bostick. This affidavit appends highlighted loan documents and other exhibits, but Plaintiff does not explain how these documents controvert Plaintiff's allegations that the Banking Defendants' activities occurred exclusively in Florida. Further, Mr. Bostick recounts personal conversations with Pollick and Trump that occurred *after* he was appointed Excalibur's Receiver, but, again, Plaintiff does not explain how these conversations establish a substantial connection between the Banking Defendants and Louisiana. (*See* Docs. 60-1, 61-1).

In light of Plaintiff's uncontroverted allegations, which are *corroborated* by the Banking Defendants' affidavits, the Court must conclude that it lacks personal

15

jurisdiction over Trump, The Bank of Tampa, and Seacoast Bank.[8] Plaintiff falls well short of establishing that the Banking Defendants maintain continuous and systematic contacts with Louisiana sufficient to confer general jurisdiction. Further, the Banking Defendants' alleged case-related activities amount to, at most, originating and servicing a single loan, and responding to (but not initiating) a handful of requests for information from the LDI. All of the underlying activities occurred exclusively outside of Louisiana. Facing similar allegations, courts (including this Court) conclude that personal jurisdiction is lacking. *See, e.g., Azmi v. Cherokee Ins. Co.*, No. 19-cv-243-BAJ-EWD, 2020 WL 411696, at *3 (M.D. La. Jan. 24, 2020) ("Merely contracting with a resident does not alone establish minimum contacts—instead, one must evaluate the overall transaction, with an eye towards determining whether the defendant purposefully availed itself of the privilege of doing business in the forum state." (citing *Christian Tours v. Homeric Tours*, 239 F.3d 366 (5th Cir. 2000)); *365 Connect, LLC v. Somerset Pac., LLC*, No. 14-cv-995, 2014 WL 3909225, at *4 (E.D. La. Aug. 11, 2014) ("[A]ny contacts between Martin and Louisiana rest on 'the mere fortuity' that plaintiff happened to be a Louisiana company. Plaintiff fails to satisfy its prima facie case of specific jurisdiction as to Martin." (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986)); *see also, e.g., Occidental Fire & Cas. Co. of N. Carolina v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 689 F. Supp. 564, 568 (E.D.N.C. 1988) (defendant bank's issuance of

---

[8] Because the Banking Defendants' affidavits corroborate and do not contradict Plaintiff's allegations, there is no need for additional evidence to resolve the instant dispute, and the Court therefore denies Plaintiff's request for discovery related "to the issue of Defendants' personal jurisdiction." (Doc. 30-1 at 2).

letter of credit to forum state resident was insufficient to confer personal jurisdiction (citing authorities)).

Pollick stands in a different category. Although Pollick states in his affidavit that he is a lifelong resident of Florida, and has never maintained any property or accounts in Louisiana, he admits that Excalibur Insurance is a Louisiana corporation, and that he served as Excalibur Insurance's CEO, President, and Board Chair for two years immediately preceding Excalibur's receivership. Pollick further admits that during this time, he traveled to Louisiana for Excalibur-related business activities. Additionally, Pollick admits that he executed the Consent Agreement with the LDI. (*See* Doc. 29-2).

Pollick's admissions that he served as Excalibur's CEO, President, and Board Chair from inception (in 2016) to downfall (in 2018), traveled to Louisiana as a result of Excalibur-related business activities, and executed the Consent Agreement with LDI demonstrate a continuous and systematic relationship with Louisiana such that exercising personal jurisdiction does not offend "traditional notions of fair play and substantial justice" under the general jurisdiction analysis. *Serv. Steel Warehouse, Co., L.P. v. Eakin*, No. 10-cv-151-BAJ, 2011 WL 3439132, at *2 (M.D. La. Aug. 5, 2011) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Pollick's contacts with Louisiana were not arbitrary, random, or intermittent, and when visiting Louisiana he undoubtedly benefited from the privileges and protection of Louisiana's laws. Further, Pollick's contacts with Louisiana resulted in continuing obligations between Excalibur (as

insurer) and Louisiana residents (as insureds). Again, facing similar circumstances, courts conclude that general jurisdiction is satisfied.[9] *See, e.g.*, *Serv. Steel Warehouse*, 2011 WL 3439132, at \*2; *see also, e.g.*, *Se. Wireless Network, Inc. v. U.S. Telemetry Corp.*, 2006-1736 (La. 4/11/07), 954 So. 2d 120, 127 (general jurisdiction was satisfied based on defendant director's single visit to Louisiana which resulted in "continuing obligations between [defendant] and Louisiana residents").

### C. The interests of justice favor transferring this action to the Middle District of Florida

Having determined that the Court may exercise personal jurisdiction over Pollick, but lacks personal jurisdiction over the Banking Defendants, the question becomes whether to dismiss the Banking Defendants without prejudice, or transfer this action to the appropriate venue under 28 U.S.C. § 1631. For the following reasons, the Court determines that transfer best serves the interests of justice, and is a more appropriate remedy than dismissal.

Under 28 U.S.C. § 1631, when the Court finds "a want of jurisdiction," a case *shall* be transferred to a district in which the action could have been brought "if it is in the interest of justice." 28 U.S.C. § 1631.  "A case is 'transferable' pursuant to § 1631 when three conditions are met: (1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Harutyunyan*,

---

[9] Because the Court determines that general jurisdiction exists over Pollick, it does not consider Pollick's argument that the Fiduciary Shield Doctrine defeats specific jurisdiction. *See Serv. Steel Warehouse*, 2011 WL 3439132, at \*2 (general jurisdiction was satisfied despite the Fiduciary Shield Doctrine precluding a finding of specific jurisdiction).

2019 WL 5551901, at *4 (quoting *Trejo-Mejia v. Holder*, 593 F.3d 913, 915 (9th Cir. 2010)).

Here, there is no dispute among the parties that this action, as it is presently constituted (without the improperly joined Neyland), could have been filed in the Middle District of Florida. Further, this Court has now determined that it lacks personal jurisdiction over the Banking Defendants. Thus, the first two elements of the test for transferability under § 1631 are satisfied. *See id.*

Further, the Court determines that transfer, not dismissal, best serves the interests of justice. First, as a general rule, the Court should avoid rulings that risk duplication of efforts among sister courts. *See W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985). Here, dismissing the Banking Defendants from this action does not end the litigation, as Plaintiff's claims will continue against Pollick and CSIC. Indeed, dismissal does not remove the threat of continued litigation even against the Banking Defendants, as dismissal for lack of personal jurisdiction is not an adjudication on the merits, and is therefore a dismissal without prejudice. *Guidry*, 188 F.3d at 623 n.2. As such, dismissing the Banking Defendants creates a strong likelihood of duplicate litigation, as Plaintiff will be required to pursue parallel actions in separate jurisdictions, thus wasting valuable judicial resources.

Second, on a related note, the Court should avoid "piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n*, 751 F.2d at 729. Here, Plaintiff alleges misfeasance resulting in the destruction of an insurance company

19

that issued thousands of insurance policies across the state of Louisiana. Excalibur and its insureds deserve uniform answers to the questions posed by Plaintiff's Petition, including, *inter alia*, whether Pollick breached fiduciary duties in his management of Excalibur, whether the Banking Defendants aided him in any such breaches, and whether CSIC wrongly denied Excalibur's claims related to Pollick's alleged breaches.

Additionally, the factors set forth at 28 U.S.C. § 1404(a) favor transferring this action to the Middle District of Florida. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (outlining factors to weigh when considering a transfer under section 1404(a)). First, again, there is no dispute that this action (without Neyland) could have been initially filed in the Middle District of Florida. Further, the relevant private and public interest factors make clear that the Middle District of Florida is a more appropriate forum. Pollick and the Banking Defendants are domiciliaries of Florida, and subject to personal jurisdiction in Florida. Nearly all of the actions set forth in the Petition occurred in the Middle District of Florida, including the negotiation and servicing of the Bank of Tampa Loan, and it stands to reason that witnesses and evidence concerning the Bank of Tampa Loan will be located there. Any such witnesses will be subject to compulsory process in Florida.

Further, Plaintiff expressly contends that Florida's substantive law applies in this case—including Florida's law of punitive damages. (Doc. 1-1 at ¶¶ 88-90). In the event Plaintiff prevails on the merits of his claims, a Florida court will be better positioned to determine whether punitive damages apply. Finally, as explained

above, the interests of justice are best served by transferring this action to the Middle District of Florida, because transfer will conserve judicial resources, avoid parallel litigation, and ensure a uniform answer to the question of whether Defendants breached their duties to Excalibur.

In sum, having considered the interests of justice and all other relevant factors, the Court will not dismiss the Banking Defendants, but will instead transfer this action to the U.S. District Court for the Middle District of Florida under 28 U.S.C. § 1631, where the action shall proceed as if it had been filed there in the first instance.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that **Katrina Rigali Trump's Rule 12(B)(2) Motion To Dismiss For Lack Of Personal Jurisdiction (Doc. 15)**, **Bank Of Tampa's, Motion To Dismiss For Lack Of Personal Jurisdiction (Doc. 18)**, and **Seacoast National Bank's Motion To Dismiss For Lack Of Personal Jurisdiction; Or Alternatively, Motion To Transfer Venue (Doc. 21)** are each **GRANTED** *to the extent* these motions seek a determination that the Court lacks personal jurisdiction over these Defendants, and that transfer of this action to the U.S. District Court for the Middle District of Florida under 28 U.S.C. § 1631 is the appropriate remedy. In all other respects these motions are **DENIED**.

**IT IS FURTHER ORDERED** that **Defendant Jeffrey C. Pollick's Motion To Dismiss For Lack Of Personal Jurisdiction Or To Transfer (Doc. 29)** is **GRANTED** *to the extent* it seeks transfer of this action to the U.S. District Court for

the Middle District of Florida under 28 U.S.C. § 1631. In all other respects the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Dennis Neyland's and Defendant Antonio Scognamiglio's joint **Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(6) (Doc. 31)** is **GRANTED** *to the extent* it seeks dismissal of Plaintiff's claims against Antonio Scognamiglio. Plaintiff's claims against Antonio Scognamiglio are hereby **DISMISSED WITH PREJUDICE**. The motion is **DENIED AS MOOT** as it relates to Defendant Dennis Neyland.

**IT IS FURTHER ORDERED** that **Defendant Jeffrey C. Pollick's Motion To Join And Adopt Motion For Priority Consideration Of Motions To Dismiss For Lack Of Personal Jurisdiction (Doc. 38)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the **Motion By Katrina Rigali Trump And The Bank Of Tampa For Priority Consideration Of Their Motions To Dismiss For Lack Of Personal Jurisdiction (Doc. 24)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's **Motion To Defer Consideration Of Defendants' Motions Regarding Personal Jurisdiction (ECF Nos. 15, 18, & 21) Until After Subject Matter Jurisdiction Has Been Determined, Or In The Alternative, Motion To Conduct Jurisdictional Discovery Prior To Any Consideration Of Defendants' Motions Regarding Personal Jurisdiction (Doc. 30)** is **DENIED** *to the extent* it seeks additional discovery on the issue of personal jurisdiction. The motion is **DENIED AS MOOT** in all other respects.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **TRANSFER** this action to the U.S. District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1631.

Baton Rouge, Louisiana, this 2nd day of March, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**